[PHILADELPHIA, FEBRUARY 4, 1837.]

## HUHN *against* LONG.

### IN ERROR.

1. By an agreement in writing between the plaintiff and defendant, it was witnessed that the plaintiff agreed to give the defendant three horses, and gear belonging to them, for the sum of $200; and in consideration thereof, the defendant agreed to work out the amount, by carting certain articles at seventy cents per thousand, until the horses, &c. were paid for: and it was further agreed that the plaintiff was to pay the defendant, one half of the amount which he (the defendant,) earned for carting during the season, until the horses, &c. were paid for. The agreement then proceeded: "and it is fully understood that the said horses, gear, &c. *is* the property of (the plaintiff,) until worked out or paid; this agreement to the contrary notwithstanding. The said (defendant) further agrees to attend to the carting, and furnishing carts, as many as are necessary, for delivering brick to buildings, and wood to the kiln, at the price stipulated above, to the brick-yard; and at the end of the season, which is the first of January, 1836, which ever party is in debt on settlement, the same is to be paid in cash; and in case the said (defendant) refuses to cart at any time when called on, the said horses, &c. are to be returned, and this agreement is to be null and void, and the said (defendant) forfeits the balance of cash remaining with (the plaintiff,) as collateral security." In replevin for the horses and gear, the court below charged the jury that the plaintiff derived *title to the horses* under the above agreement, and that if they found that there had been a demand by the plaintiff upon the defendant to cart, and a refusal by him, then the verdict should be for the plaintiff without any regard to the state of the accounts between the parties; that in any view of the case, it would be wholly unnecessary for them to examine into these accounts, and that it was immaterial in this action what way the balance was: *Held,* that this direction was erroneous.

2. Evidence of a demand made by the plaintiff upon a person in the employment of the defendants, as a carter, he being at the house of the defendant at the time, *held,* not to be admissible as evidence of a demand upon the defendant; there being no proof that the demand was communicated to the defendant.

ERROR to the District Court for the city and county of Philadelphia, to remove the record of an action of replevin brought by John D. Huhn against John Long, for three horses and their gear.

The action was brought in the Court below to June Term, 1835. The defendant pleaded *non cepit* and property. The plaintiff replied property in himself: and upon these issues the cause came on for trial on the 26th of October, 1836, before Judge JONES; when the plaintiff in support of his case gave in evidence the following agreement between himself and the defendant.

"This agreement made the 16th day of March, 1835, between John D. Huhn, brickmaker, of the county of Philadelphia, and John Long, carter, of the city of Philadelphia, of the other part, witness whereas John D. Huhn agrees to give to John Long, three horses, and gears for the same, belonging to the three horses, for the sum of

(Huhn v. Long.)

$200, and in consideration of the same, the said John Long agrees to work out the amount by carting brick, wood and sand, at seventy cts. per thousand, until the said horses, gears, &c., are paid for; and it is further agreed that John D. Huhn is to pay the said John Long one half of the amount which he, the said John Long earns for carting during the season until the horses are paid for, and it is fully understood that the said horses, gears, &c. is the property of John D. Huhn, until worked out or paid; this agreement to the contrary notwithstanding. The said John Long further agrees to attend to the carting, and furnish carts as many as are necessary for delivering brick to buildings, and wood to the kiln, at the price stipulated above to the brick yard; and at the end of the season, which is the 1st of January, 1836, which ever party is in debt on settlement, the same is to be paid in cash; and in case the said John Long refuses to cart at any time when called on, the said horses, &c. are to be returned and this agreement is null and void, and the said Long forfeit the balance of cash remaining with John D. Huhn, as collateral security."

The plaintiff's counsel then called George Huhn, son of the plaintiff, who testified that there was a settlement between the parties on the 30th of March, 1835, when there was found to be a small balance due to the plaintiff; and that in one instance, before the issuing of the writ of replevin, his father refused to give Long any money, who thereupon said that he would work no more for the plaintiff. Another witness named Given, testified that Long had told him that Huhn had not treated him well, and that was the reason he had quit work for him. The plaintiff's book of original entries was also given in evidence:

The defendant's counsel then called one James Morrison, who testified as follows:

"I recollect a conversation between Huhn and Long at the brick yard last May, 1835. Long asked Huhn for some money or an order for feed for his horses; he wanted some money for me; Mr. Huhn refused to give Mr. Long the order or the money. He did not allow Huhn owed it to him, but he said he wanted some money or feed; Mr. Huhn did not say whether he owed him or not; the price of hauling sand to buildings is $1 per load; hauling wood is the same as hauling bricks."

Being cross-examined,—"I know when Long left Huhn: he quit him about the 11th of July, 1835, did not go back again; he quit Mr. Huhn because he could not get money; I never heard any conversation but the one. Huhn said he was tired giving him money and feed, and to my knowledge he never gave him but $10. Mr. Huhn came after the horses next day or the next day but one after Long quit him; he came on horse back to get them to work; he saw me,

(Huhn *v.* Long.)

I was sitting up stairs in Long's house; I was paid for driving horses by Long; he, Huhn, said he wanted the carts to haul bricks; I don't know that he saw Long on the subject; I never told Long as I recollect, that Huhn had called and wanted the hauling to be done."

The counsel for the plaintiff then asked the witness to state all the conversation which then took place, between Mr. Huhn and the witness, respecting the said horses and carts being required by Mr. Huhn to return to work, in order to show a demand then and there made, which question was objected to by the counsel for the defendant, and overruled by the learned Judge. Whereupon the counsel for the plaintiff excepted thereto, and tendered his bill of exceptions.

The Judge charged the jury as follows:

" The plaintiff claims title to the horses in dispute under the agreement of the 16th of March, 1835, which, as to the case before you, may be viewed as consisting of two distinct parts. 1. The provision that the horses shall continue to be the property of the plaintiff until paid for by the defendant; and 2. The clause of forfeiture by the defendant for refusing to haul the bricks, &c. when called on by the plaintiff for this purpose. As regards the *first* provision, although the agreement is by no means explicit, yet this much is plain, that the defendant's possession of the horses so far as this provision was to affect it, could not be interfered with prior to the first day of January, 1836,—this being the *end of the season*, as fixed by the parties, and the time when a settlement was to take place between them in respect to the hauling contracted to be done, &c. The replevin having been sued out in July, 1835, was therefore sued out *prematurely*—for Long the defendant's declaration a few days previously, that he would do no more work for the plaintiff, would not have prevented him from resuming the contract and working out his debt.

The claim for *forfeiture* must be strictly examined. It cannot be exacted unless the plaintiff has done every thing which by the agreement he stipulated to do, in order to gain the right. Now by the very terms of the agreement, the defendant was to refuse after being called upon before the forfeiture would be incurred. What proof is there on this point? I perceive none, though this is a point for your determination, not mine. Three witnesses have been examined to establish this part of the plaintiff's case—1. his son, Dr. Huhn; all he says is, that Long requested an advance of money on a particular occasion from his father, that his father refused it, upon which Long declared that he would do no more work for him. Samuel Given, was the second witness; I will not recapitulate his testimony, it must be part in your recollection; one thing is certain according to this witness, that he does not know of any demand or

(Huhn *v.* Long.)

request by Huhn to Long to do work for him; Long told him he had quit the work and assigned a reason, but did not tell him that he had been called upon to do any work. It does not appear from the third witness, Morrison, that at the time the plaintiff called on him to resume the hauling, he saw the defendant. The demand on Morrison is insufficient to affect the defendant. The strongest testimony, it appears to me, is that of Given; and if you think yourselves justified in inferring from what he says that a demand was made, it is in your power to do so; for the question whether or not a demand was made, is a question of fact, which you alone must decide; you ought, however, to be well satisfied; as in addition to the forfeiture of the horses, the penalty is superadded of any balance of money then in the hands of the plaintiff, belonging to the defendant. If you find the demand and refusal, your verdict should be for the plaintiff, without any regard to the state of the accounts between the parties; in any view of the case, it will be wholly unnecessary for you to examine into these accounts. It is immaterial in this action what way the balance was."

The jury found for the defendant; and on the return of the record the following errors were assigned.

1. "The judge refused to permit the plaintiff's counsel to examine James Morrison as to the demand made by the plaintiff of the chattels in dispute.

2. The judge charged the jury; 1. That the plaintiff derived his title to the horses in dispute under the agreement of the 16th of March, 1836. 2. That the replevin was premature, and the plaintiff could not reclaim the said horses until the 1st of January, 1836. 3. That the jury had no right to examine the mutual accounts of the the parties in proof. 4. That this action was a claim for a forfeiture, and that there was no evidence of a demand, and that such evidence was necessary 5. That the quitting of Huhn's employ by the defendant as proved, did not justify the jury in finding for the plaintiff.

3. The judge took the whole case from the jury.

Mr. *Hirst* for the plaintiff in error, cited *Richards* v. *Murphy*, (1 *Wharton's Rep.* 185.) *M'Clain* v. *Work*, (5 *Binn.* 356.)

Mr. *Fallon*, contra.

The opinion of the court was delivered by

KENNEDY, J.—The first error is a bill of exceptions to the opinion of the court below, overruling evidence offered of a conversation which took place between the plaintiff and Morrison, the witness, in the absence of Long, the defendant, relative to the plaintiff's wanting Long to return, with his horses and carts, to work for him.

(Hnlm *v.* Long.)

The conversation proposed to be proved happened at the house of the defendant, where the plaintiff called when the defendant was not at home, but meeting with the witness there, who was hired by the defendant at the time as a carter, to drive some of his horses, told him what he wanted of the defendant. The plaintiff offered this evidence, as he alleged, in order to show a demand made by him upon the defendant to cart for him, as mentioned in the agreement. The counsel of the plaintiff claims that he had a right to give this evidence for this purpose, upon the ground that the witness was the agent of the defendant, and attending to his business as such. Had there been any evidence given previously, tending to prove this, it would have been proper enough, perhaps, to have submitted the evidence offered, to the jury. But no such evidence was given. Indeed, it is not pretended that any was given, from which the jury could have drawn the conclusion that the witness was the agent of the defendant, except that he " was paid for driving horses by Long ;" meaning that he was hired and paid by the defendant, as one of his carters. But it is clear this was no evidence of his being the agent of the defendant. At the time of the conversation, he was not even actually engaged in driving any of the defendant's horses, but was sitting in his house. Neither does it appear that the plaintiff requested the witness to make known to the defendant, that he wished him to return and cart for him ; and if he had, it would have amounted to nothing, unless the witness had communicated it to the defendant.

What the plaintiff, therefore, said to the witness, in the absence of the defendant, ought not to affect the rights of the latter, further than the witness was permitted to testify, that is, merely to show that the plaintiff had called at the house of the defendant, after he had quit carting for him, and inquired for him, that he might let him know that he wished him to return, and resume his work again. This it was competent for the plaintiff to prove by the witness, for the purpose of repelling any presumption that otherwise might have been attempted to have been raised, of his having acquiesced in or consented to the defendant's quitting work for him. But further than this, we think the plaintiff had no right to go, and that the court below was right in refusing to permit him to treat the witness as the agent of the defendant, and to give evidence of what he said to the witness, as if he had been the agent of the defendant, attending in his place to his business, either generally, or in this particular transaction.

All the remaining errors assigned, have reference to the charge of the court to the jury, and seem to have arisen from what we conceive was a misinterpretation of the agreement, entered into between the parties, bearing date the 16th of March, 1835. They will therefore be considered together, as one error.

The Judge, in his charge to the jury, seems to have considered

the agreement as containing different distinct provisions, not immediately connected with, or depending upon each other, when he ought rather to have regarded them as relative parts of the same agreement, all mutually depending upon each other, and necessary to be brought under the same view, in order to ascertain the true meaning and intention of the parties. It is the intention of the parties, which ought to be sought for in the construction of contracts; and, if not inconsistent with legal principles or sound policy, it ought to prevail, and be our only guide. But the judge, in expounding the agreement, seems to have disjointed it, and thus to have lost sight of the real intention of the parties, which we think is very clearly and distinctly presented, when we come to look at all the various parts of the agreement, and examine their mutual and relative bearing upon each other.

In the first place, the judge, according to the view which he took of the agreement, seems to have thought that the plaintiff, who is admitted to have been the absolute owner of the horses and gear, in question; and to have been in the possession of them, before and up to the time of the agreement, thereby parted with his right of property, as well as that of his possession to them; for he commences his charge by saying, "The plaintiff claims title to the horses in dispute, *under the agreement of the 16th of March,* **1835.**" If such was the idea of the judge, we think it was a misapprehension, on his part, of the true operation of the agreement, and contrary to the express terms of it. The words of the agreement, in relation to this point are, "and it is fully understood, that the said horses, gear, &c. is the property of John D. Huhn, until worked out or paid, this agreement to the contrary notwithstanding." So that by the delivery of the horses and gear to the defendant under the agreement, it is perfectly manifest that the right of possession was all that was intended to be passed, and all that he acquired thereby. More than this he was not to have, until he paid the two hundred dollars, the price agreed on for the horses and gear, "by carting brick, wood and sand, at seventy cents per thousand," as therein stated. As soon, however, as this should be done, it is clearly implied, from the clause of the agreement recited above, that the right of property in the horses and gear was to remain no longer in the plaintiff, but to become vested in the defendant.

On the other hand, the right of possession which accompanied the delivery of the horses and gear to the defendant under the agreement, according to the tenor thereof, was to cease and to become vested in the plaintiff, the moment that the defendant refused to pay the price agreed on, in the manner set forth in the agreement. That such was the intent of the parties, is quite obvious from the following clause thereof: "and in case the said John Long refuses to cart *at any time,* when called on, the said horses, &c. are to be *returned,* and this agreement is *null* and *void,* and the said

(Huhn *v.* Long.)

Long forfeit the balance of cash remaining with John D. Huhn, as collateral security." This last recited clause, which is the conclusion of the agreement, is not to be understood as the judge below would appear to have apprehended it. He seems to have thought, that if the defendant had gone on and by his labour paid the plaintiff the price in full for the horses and gears in the manner stipulated by the agreement, before the first of January following the date thereof had come around; and then upon being expressly required by the plaintiff to continue carting for him until that time, he had refused, the plaintiff having fulfilled, and being still willing to continue the fulfilment of the agreement on his part, the defendant would have been bound to a compliance with the plaintiff's requisition in this respect, or otherwise, would have forfeited all right to the horses and gears. That the defendant would have been bound to have complied with the plaintiff's request under such circumstances, is certainly so far correct; but it is not a fair construction of the agreement to say, that a forfeiture of his right to the absolute ownership of the horses and gears would have been the consequence of his refusal; he would only have rendered himself liable to pay to the plaintiff such damages as the latter could have shown, he had thereby sustained. This is the evident meaning of this part of the agreement; for the forfeiture there mentioned is not applied in terms to the right which the defendant might have acquired, under the contract, to the horses and gears, but to "the balance of cash remaining with John D. Huhn as collateral security." This "balance of cash" is spoken of here as something mentioned previously in the agreement; for the definite article "the" is prefixed to it. Now the only part of the agreement, to which it can have a reference, and by which it must be explained, is that in which the mode of paying or satisfying the price agreed to be given for the horses and gears, is stated. It is in these words: "the said John Long agrees to work out the amount (meaning two hundred dollars, the price of the horses and gears,) by carting brick, wood and sand at seventy cents per thousand, until the said horses and gears are paid for; and it is further agreed, that John D. Huhn is to pay the said Long one-half of the amount, which he, the said John Long, earns for carting during the season until the horses and gears are paid for." From this it appears, that one-half of the amount only of what should be earned by the defendant by carting for the plaintiff, was to remain in the hands of the latter, and to be applied to the payment of the price of the horses and gears; and this half thus to be left to accumulate until it should amount to the two hundred dollars, is evidently that which is alluded to and intended to be expressed by the phrase, "the balance of cash," &c. But according to the tenor of the agreement, as soon as this balance should have increased to the two hundred dollars, it was then to be applied to the payment of the price of the horses and gears, that the right

(Huhn *v.* Long.)

of property as well as the possession of them might become vested in the defendant. After being thus appropriated, and the defendant, in consideration thereof, having become the absolute owner of the horses and gears, it could not with propriety, under any view that can be taken of it, be called a "balance of cash remaining with John D. Huhn as collateral security." Had the defendant continued to have carted for the plaintiff, and by this means paid him for the horses and gears, though it had been months before the first of January following the date of the agreement, the defendant under the agreement would have been entitled to have demanded and received the whole price of his work, performed thereafter from time to time as he performed it; so that there would have been no balance of cash on account of it remaining with the plaintiff, unless the defendant had chosen to leave it so. In no event, therefore, could the defendant, under the agreement, if he had once paid by his labour for the horses and gears, have forfeited his right to them. It was only before he had paid for them fully in this way, and of course before he had acquired the right of property in them, that upon his refusal to cart for the plaintiff, he was to lose his right to the possession, and bound to return them again to the plaintiff, beside forfeiting whatever he had done towards paying for them in part only.

The Judge also instructed the jury, if they should find that there was a demand made by the plaintiff upon the defendant to cart, and he refused, that they ought to find a verdict for the plaintiff without any regard to the state of the accounts between the parties; and that, under any view of the case, it would be wholly unnecessary to examine into their accounts. To this we cannot give our assent. It is contrary to the view and construction just presented of the agreement; wherein it has been shown, that if from the accounts, it had appeared, that the plaintiff had been once fully paid the price of the horses and gears, then in no event would he have been entitled to recover in this action; while, on the contrary, if it appeared therefrom, that he had not been paid, and the defendant, without any sufficient cause, had refused to go on and pay therefor, according to the terms of the agreement, the plaintiff would have had a right to recover here.

But the state of the accounts was material for another purpose, in order to show whether the defendant was justified in refusing, as was testified he did, to work any longer for the plaintiff: for by the express terms of the agreement, we have seen, that the plaintiff was bound to pay the defendant, from the start, for one-half of his work, as he performed it, until the other half should become equal in amount to the price of the horses and gears, so that he might be enabled to subsist his horses and defray other current expenses attending the doing of the work: but if from the accounts between them, it had appeared that the plaintiff was in arrear, and had refused to pay the defendant for one-half of the work actually done

(Huhn v. Long.)

by him, it would have shown a clear violation of the agreement first on the part of the plaintiff himself; and would have furnished the defendant with a good excuse for refusing to go on with the further performance of his part of the agreement.

But if it be true, as is alleged by the plaintiff's counsel, that the plaintiff not only paid the defendant for the half of his work, but actually overpaid him for the whole of it, without taking the price of the horses and gears into the account at all ; and the evidence given on the trial by the plaintiff, showing that the defendant had quit the plaintiff's work, and that he declared he would work no more for him, be entitled to credit, the plaintiff ought, clearly, to recover in this action.   If the plaintiff were not in arrear with the defendant, in paying for one-half of the work done by him, according to the contract, and the horses and gears not being paid for, the conduct of the defendant, as represented by the evidence, in quitting work for the plaintiff, and declaring at the same time, that he would work no more for him, was a plain and direct violation of his contract, and entitled the plaintiff immediately to a return of the horses and gears ; which the defendant ought to have given up, without waiting a demand to that effect from the plaintiff.

We, therefore, think the judgment ought to be reversed, and a *venire facias de novo* granted ; which is ordered accordingly.

Judgment reversed, and *venire facias de novo* ordered.